IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PINELLAS COUNTY FLORIDA
CIVIL DIVISION

GABE McINTYRE,

    Plaintiff,

v.

    CASE NO.: 07-012369-CI-15

DELHAIZE AMERICA, INC., d/b/a
SWEETBAY SUPERMARKET,

    Defendant.
_____/

## COMPLAINT

Plaintiff, GABE McINTYRE (hereinafter "McINTYRE"), by and through his undersigned attorneys, hereby sues the Defendant, DELHAIZE AMERICA, INC., d/b/a SWEETBAY SUPERMARKET (hereinafter "SWEETBAY"), and alleges as follows:

### JURISDICTION AND VENUE

1. This is an action for damages in excess of $15,000.00.

2. Venue lies within Pinellas County because a substantial part of the events giving rise to this claim arose in this Judicial District.

### PARTIES

3. McINTYRE is a resident of Pinellas County, Florida.

4. SWEETBAY is a domestic corporation, licensed and authorized to conduct business in the State of Florida and doing business within Pinellas County.

## FACTS

5. McINTYRE began his employment as a Pharmacist with SWEETBAY in October 2005.

6. On or about December 7, 2005, McINTYRE arrived at the store where he worked and noticed that the Pharmacy was left unattended, which is a violation of Pharmacy Rules of the Florida Administrative Code.

7. McINTYRE reported this violation of law to the Store Manager.

8. After he reported this violation, he was retaliated against by his Pharmacy Supervisor.

9. On or about January 25, 2006, McINTYRE reported additional violations to the Pharmacy District Manager by his Pharmacy Supervisor concerning narcotic inventory control issues. Specifically, McINTYRE was directed by his Pharmacy Manager to forge her signature on a form to be used for the ordering of dangerous narcotics. McINTYRE refused to forge the document.

10. On or about January 27, 2006, a customer known by McINTYRE to be one engaged in drug-seeking behavior, told McINTYRE that his Pharmacy Supervisor advised that the Pharmacy "makes mistakes all the time" and gave the drug-seeking patient narcotics at no cost with no record to substantiate this "mistake."

11. On or about February 5, 2006, McINTYRE was informed by his Pharmacy Supervisor that she had received complaints about him, but declined to give him specifics as to these complaints.

12. On or about March 24, 2006, McINTYRE was informed by the Store Manager

that he had received many complaints from the Pharmacy Supervisor about McINTYRE. When McINTYRE asked for specifics about these complaints, the Store Manager declined to discuss them with him and informed McINTYRE that he may have to report him to the Pharmacy District Manager.

13. On or about March 24, 2006, during the course and scope of his employment while performing his duties as a Pharmacist, McINTYRE was approached by a male customer who asked him if he would give him the same deal on Vicodin he received from "the black lady" (referring to McINTYRE's female Pharmacy Supervisor). McINTYRE subsequently learned that his Pharmacy Supervisor had given modified pricing to this customer. McINTYRE reported this incident to his Store Manager.

14. On or about April 2, 2006, during the course and scope of his employment while performing his duties as a Pharmacist, McINTYRE was asked by a customer to pay his insurance co-payment for his medication. This customer told McINTYRE that he was short on cash and the Pharmacy Supervisor had previously paid a co-payment for him. McINTYRE reported this incident to the Store Manager.

15. On or about April 5, 2006, McINTYRE was informed by the Store Manager and the Pharmacy District Manager that he was being transferred to a different store, effective April 18, 2006.

16. On or about April 11, 2006, McINTYRE opposed his transfer to another store, to no avail. McINTYRE was further informed by the Pharmacy District Manager that he would be terminated if he did not agree to the transfer.

17. On or about April 13, 2006, McINTYRE requested that if he was going to be

transferred, he would prefer to go to a store closer to his home. This request was denied.

18. On or about April 18, 2006, against his wishes, McINTYRE was transferred to a different store that was much further from his home.

19. On or about August 10, 2006, McINTYRE was again accused of being the subject of an anonymous complaint. Despite his request for specifics of this complaint, he was denied any information about the anonymous complaint.

20. Plaintiff was subsequently terminated from his employment.

## COUNT I
## FLORIDA PRIVATE WHISTLEBLOWER'S ACT

21. Plaintiff realleges and adopts the allegations stated in Paragraphs 1 – 20.

22. Plaintiff was terminated from his/her employment with Defendant as a direct result of and in retaliation for his/her reporting of and opposition to violations of a law rule or regulation.

23. Plaintiff objected to and/or refused to participate in the violation of various Pharmacy Rules of the Florida Administrative Code and Florida Statutes, including but not limited to 64B16-27.400, Practice of Pharmacy, 64B16-27.831, Standards of Practice for the Dispensing of Controlled Substances for Treatment of Pain and Fla. Stat. 465.005 and 465.0155.

24. The retaliatory actions of Defendant constitute a violation of the Florida Private Whistleblower's Act.

25. As a direct result of the Defendant's retaliatory actions, Plaintiff has sustained damages.

WHEREFORE, Plaintiff prays for:

a. Back pay and benefits;

b. Interest on backpay;

c. Front pay and/or lost earning capacity;

d. Compensatory damages;

e. Costs and attorney's fees;

f. For such other relief as the Court deems equitable.

DATED: 11/27/2007

FLORIN ROEBIG, P.A.

*Christopher D. Gray*
**CHRISTOPHER D. GRAY, ESQUIRE**
Florida Bar No.: 902004
**THOMAS D. ROEBIG, JR., ESQUIRE**
Florida Bar No.: 0651702
**WOLFGANG M. FLORIN, ESQUIRE**
Florida Bar No.: 907804
777 Alderman Road
Palm Harbor, Florida 34683
Telephone No.: (727) 786-5000
Facsimile No.: (727) 772-9833
Attorneys for Plaintiff