# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**GABE MCINTYRE,**

    **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　Case No. 8:07-cv-2370-T-30TBM

**DELHAIZE AMERICA, INC.,**

    **Defendant.**

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Final Summary Judgment (Dkt. 27), and Plaintiff's Response in opposition to the same (Dkt. 43). The Court, having reviewed the Motion, Response, and supporting memoranda, and being otherwise fully advised in the premises, determines the Motion should be granted.

### Background[1]

Plaintiff Gabe McIntyre ("Plaintiff") began employment as a pharmacist with Defendant Delhaize America, Inc., d/b/a Sweetbay Supermarket ("Defendant" or "Sweetbay") in October of 2005. At all times pertinent to this action, Plaintiff was supervised by Pharmacy Manager Joy Wallace, Store Manager Tom Mullen, and Pharmacy District Manager Ken Petitti. Soon after beginning his employment, Plaintiff claims he

---

[1]In considering a motion for summary judgment, the Court must examine the evidence in the light most favorable to non-movant and draw all inferences in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985). For purposes of this Order, the Court has thus relied on Plaintiff's version of the facts (as supported by Plaintiff's sworn testimony).

began noticing discrepancies in the pharmacy's narcotics inventory. Plaintiff and Wallace were responsible for maintaining and monitoring the inventory. Plaintiff reported the discrepancies to Wallace. From the end of December 2005 through January 2006, Plaintiff noted discrepancies in the inventory for Schedule II narcotics, including a bottle of Percocet, approximately twenty (20) Duragesic patches, and a pain reliever called Actiq.[2] Despite his reports of log discrepancies, Plaintiff claims Wallace failed to correct the logs to reflect the pharmacy's actual inventory or take necessary precautions to prevent the problem from recurring.

Plaintiff also claims to have observed Wallace filling prescriptions for patients he believed were "drug-seeking."[3] Based on his experience working at another pharmacy, Plaintiff claims to have warned Wallace that customers identified as "Ms. M" and "Ms. S" were drug-seeking patients. Despite his warnings, Plaintiff claims Wallace continued to fill their prescriptions. According to Plaintiff, he had an encounter with Ms. M in which she asked him to fill a prescription that Wallace had previously filled without a valid prescription.

---

[2]Pursuant to the Controlled Substances Act ("CSA"), controlled substances are placed into five schedules. 21 U.S.C. § 812(a). Substances classified as "Schedule II" are drugs or other substances with a "high potential for abuse" that are currently accepted for medical use in treatment in the United States, the abuse of which "may lead to severe psychological or physical dependence." Id. at § 812(b)(2).

[3]During his deposition, Plaintiff described "drug-seeking patients" as customers who sought to have overlapping prescriptions filled at multiple locations. Such patients would obtain duplicate prescriptions for the same or similar medications from different doctors and utilize different pharmacies to fill the prescriptions.

In or around January or early February of 2006, having received no response from Wallace, Plaintiff began reporting the log discrepancies and Wallace's conduct to Petitti and Mullen. Plaintiff claims Petitti declined to address the complaints or conduct an investigation. In or around February of 2006, Plaintiff went to Petitti's superior, Pam Heath, with his concerns. In early April of 2006, Plaintiff again complained to Pam Heath about inventory discrepancies. Plaintiff also complained to Deb Odom, a human resources representative, about Wallace's conduct.

After consulting with Odom, Petitti decided to transfer Plaintiff to another store. The transfer occurred on April 18, 2006. Petitti claimed the transfer was necessary because Plaintiff was not fitting in with the team. Plaintiff believes he was transferred because Defendant did not want to address the issues raised in his complaints regarding Wallace's conduct. Plaintiff claims the new location was less favorable because of an increased workload, lack of technician support, and reduced workspace due to remodeling.

On August 10, 2006, Petitti and Odom met with Plaintiff to discuss a customer's anonymous complaint against Plaintiff. During the meeting, Petitti discussed a complaint that Plaintiff had been rude to a customer. Petitti also referred to a number of additional customer complaints during the meeting, but would not provide details about when and where those complaints took place (or from whom they came). According to Plaintiff, Petitti also discussed his beliefs on good customer service and reprimanded Plaintiff for not dispensing enough narcotics.

On or about August 19, 2006, Petitti, Heath, and Odom met with vice president of human resources Steven Campbell to discuss Plaintiff's termination. All four agreed Plaintiff's termination was merited. According to Petitti, Plaintiff was terminated in August of 2006 because of continued customer complaints and a poor attitude.

As a result of his termination, Plaintiff filed the instant action. Plaintiff claims Defendant terminated his employment in violation of Florida's Whistleblower Act, Fla. Stat. §§ 448.101 - 448.105 (the "FWA"). Defendant argues it is entitled to summary judgment on Plaintiff's FWA claim.

## **Summary Judgment Standard**

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in his or her favor. Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. Chelates, 477 U.S. at 324. The evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49. This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).[4]

## Discussion

The FWA provides, in pertinent part, that:

An employer may not take any retaliatory personnel action against an employee because the employee has: . . .

---

[4] Substantial evidence is "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." Verbraeken, 881 F.2d at 1045.

> (3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

Fla. Stat. § 448.102. The purpose of the legislation is to "protect private employees who report or refuse to assist employers who violate the law enacted to protect the public." Rutledge v. SunTrust Bank, 262 Fed.Appx. 956, 958 (11th Cir. 2008) (quoting Jenkins v. Golf Channel, 714 So. 2d 558, 563 (Fla. 5th DCA 1998)). The Eleventh Circuit has held that "the summary judgment analysis for a Title VII retaliation claim should be applied to a claim for retaliatory discharge under the Florida Whistleblower Act." Id. at 958 (citing Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 950-51 (11th Cir. 2000)). In order to establish a prima facie case under the FWA, Plaintiff must show that: (1) he "engaged in statutorily protected expression," (2) he "suffered a materially adverse action of a type that would dissuade a reasonable employee from engaging in statutorily protected activity," and (3) "there was some causal connection between these events." Id. (citing Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001) (additional citations omitted)).

In order to show that he engaged in a statutorily protected activity under the FWA, a claimant must show that he objected to or refused to participate in (i) an illegal activity, policy, or practice of an employer, (ii) illegal activity of anyone acting within the legitimate scope of their employment, or (iii) illegal activity of an employee that has been ratified by the employer. Sussan v. Nova Southeastern University, 723 So. 2d 933, 934 (Fla. 4th DCA 1999). A violation of law by an employee as opposed to a defendant employer is irrelevant to, and cannot adequately support, a claim based on the FWA. See Douberley v. Burger

King Corporation, 2007 WL 1175757 (M.D.Fla. April 27, 2007) (holding employee's alleged violation of law was "irrelevant and inadequate in a claim based on FWA because [the employee] was merely an employee . . . Plaintiff failed to allege any violation of law, rule, or regulation by any *Defendant-Employer*." (emphasis in original)).

In the instant case, Plaintiff concedes that the only activities he considers to be protected under the FWA are "in general terms, the complaints he made to his supervisors and corporate regarding missing narcotics and the distribution of narcotics to drug-seeking clients, and his refusal to disperse [sic] narcotics to certain clients." Plaintiff's Response at 2 n1 (Dkt. 43). Plaintiff argues Wallace dispensed narcotics to drug-seeking clients and failed to appropriately monitor inventory in violation of a number of federal and state laws and regulations. However, the conduct for which Plaintiff complained was limited to that of Wallace. Basically, Plaintiff complained that Wallace was acting outside the legitimate scope of her employment. Plaintiff has failed to point to any activity, policy, or practice of Sweetbay supporting the distribution of narcotics to drug-seeking clients. While Plaintiff makes several arguments in support of his position, each argument fails.

First, Plaintiff argues Sweetbay's main goal was to fill as many prescriptions as possible. Plaintiff and other pharmacist testified Petitti pushed them to dispense as many prescriptions as possible. Petitti allegedly reprimanded Plaintiff for failing to do so. However, nothing in the record indicates that Petitti directed or required Plaintiff or any other pharmacist to illegally dispense narcotics to drug-seeking patients.

Next, Plaintiff argues Sweetbay (i) ignored the security of the pharmacy and provided inadequate training to employees on how to identify drug-seeking clients, (ii) hired Petitti who did not have a background in pharmaceuticals as a District Pharmacy Manager, and (iii) employed Wallace without appropriately checking her references.[5] However, even if true, these allegations do not establish that Plaintiff objected to or refused to participate in an illegal activity, policy, or practice of Sweetbay.

Finally, Plaintiff argues Sweetbay ratified Wallace's conduct by failing to investigate the missing narcotics, audit the pharmacy, and/or appropriately investigate Wallace's conduct and background. However, Plaintiff fails to show how any of these actions (or inactions) ratified Wallace's alleged conduct. There is no evidence in the record indicating Sweetbay ratified or approved of missing pharmaceutical inventory. Missing inventory, whether stolen from the company or lost, would be of no benefit to Sweetbay. To the contrary, such losses would damage Sweetbay by reducing its profits. Moreover, Sweetbay's failure to investigate Wallace to Plaintiff's satisfaction is insufficient to constitute a ratification of her alleged illegal conduct.

Plaintiff has failed to show that he objected or refused to participate in an activity, policy, or practice of *Sweetbay* that violated a law, rule, or regulation. Accordingly, Plaintiff has failed to show he engaged in a statutorily protected expression. Therefore, he has failed to establish a prima facie case under the FWA. Defendant is entitled to summary judgment.

---

[5] Plaintiff argues that had Sweetbay done so, it would have discovered Wallace pled no contest to felony charges in violation of Florida's Comprehensive Drug Abuse Prevention and Control Act for obtaining or attempting to obtain controlled substances by fraud.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant's Motion for Final Summary Judgment (Dkt. 27) is **GRANTED**.

2. The Clerk is directed to enter **FINAL SUMMARY JUDGMENT** in favor of Defendant and against Plaintiff.

3. All pending motions are denied as moot. The Clerk is directed to close this case.

**DONE** and **ORDERED** in Tampa, Florida on April 17, 2009.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2007\07-cv-2370.msj.frm